UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.                                                         CRIMINAL NUMBER 04-10268-RGS

JULIO CESAR RODRIGUEZ

## DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND SENTENCING MEMORANDUM

**Introduction**

Now comes the defendant and respectfully requests that the Court consider the arguments submitted herein as an aid to the sentencing hearing scheduled before the Court for April 25, 2005. The defendant herein moves for downward departures in his base offense level and requests that the Court impose a reduced sentence. The defendant respectfully asks also that the Court consider certain arguments regarding the application of United States v. Booker, 125 S. Ct. 738 (2005), and Apprendi v. New Jersey to this case and the enhanced sentencing provisions of section 2L1.2(b)(2). In the departure arguments the undersigned set forth mitigating factors under the United States Sentencing Guidelines (hereinafter the "Guidelines") that serve as a justified basis for the Court to depart downwards in the base offense level affixed to the defendant in his pre-sentence report. The defendant submits attachments to this memorandum, and will defer to the Court as to whether any evidence should be heard at the sentencing hearing.

1.  **REQUEST TO STRIKE THE SECTION 2L1.2(b)(2) ENHANCEMENT PURSUANT TO THE SUPREME COURT'S HOLDING IN APPRENDI v. NEW JERSEY.**

The defendant challenges the 16 level adjustment in his base offense level pursuant 2L1.2(b)(2) on the grounds that the indictment fails to specify the prior convictions that give rise to the enhancement. The indictment reads that the defendant committed the offense of violation 8 U.S.C. 1326 a and b. The indictment is defective for the purposes of construing it as alleging a violation of 8 U.S.C. 1326(b)(2), and the failure of the government to specify the provisions of this stature in the indictment should preclude it from requesting the enhanced penalties that are referred to in subsection (b)(2) and the 16 level adjustment in the specific Guideline of 2L1.2(b)(2). In support of this argument the defendant relies on the Supreme Courts holdings in United States v. Booker, 125 S. Ct. 738 (2005), and Apprendi v. New Jersey. 120 S. Ct. 2048 (2000).

The Booker decision has further confirmed that guideline maximums constitute the functional equivalent of statutory maximums for purposes of an Apprendi analysis. Furthermore he suggests that if Booker applies here, his sentence should not be more that the statutory maximum of the Guideline Offense level he would receive should certain enhancements not be adopted by the Court at sentencing. Specifically Rodriguez did not factually admit in his Rule 11 hearing to the specifics of any one criminal conviction in the past. Likewise the indictment in this case does not reference any one specific prior criminal charge or conviction against the defendant supervisory role adjustment. The 16 level adjustment referenced in the Pre-Sentence Report is one that should be applied only where the predicate enhancements that support the increase are referenced specifically by the indictment.

While prior criminal convictions appear to be one of the few sentencing issues that were unaffected by the Booker decisions, the 2L1.2(b)(2) adjustment is more akin to relevant conduct, supervisory role and other aggravating sentencing factors that the Supreme Court has indicated must be pleaded in an indictment and admitted to by the defendant in the Rule 11 scenario.

Apprendi's protection did not reach to prior convictions. However, Justice Stevens stated that:

> "In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in Jones. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." Apprendi of 2362-2363, citations omitted.

However, the above quoted language was not the Apprendi consensus holding of the Court. Justice Thomas (with whom Justice Scalia joined) submitted an opinion that appears to state that all elements which impose or increase punishment must be pleaded, and set forth in an indictment and treated as essential elements of the offense. The ensuing Supreme Court decisions support the notion that anything increasing the "guideline maximum" (here – Level 8) must be so pleaded in the indictment. The defendant argues that here the indictment is defective for the purposes of the (2L1.2(b)(2), and because the indictment does not specifically reference the prior convictions (aggravated or not) as set forth in the Pre-Sentence Report, the Court should not adopt the 16 level enhancement.

The defendant's request is grounded in the assertion that Almendarez-Torrez v. United States, 118 S. Ct. 1219 (1998), and the Apprendi decision, read in light of Blakely and Booker, sheds new light on a 8 U.S.C. 1326 prosecution. Justice Stevens indeed conceded that it was arguable that Almendarez-Torrez was incorrectly decided. Apprendi at 2360. In addition, Justice Thomas stated that he had succumbed to error in the Almendarez-Torrez decision. Id. at 2379. The defendant argues that read as a whole, the Booker decision overrules Almendarez-Torrez, and the circumstances of this case require the result that the Court strike the 2L1.2(b)(2), 16 level adjustment. With respect to the express language of Justice Stevens's decision, (excluding prior convictions from Apprendi's scope), the defendant points out that the majority was referring to criminal history calculations, and not a statute (such as 8 U.S.C. 1326) and circumstances such as exist in this case.

Here, Rodriguez pleaded guilty to the face of an indictment that did not specifically reference the prior convictions. The defendant pleaded guilty without an agreement, and thus the government can not point to a signed contract of the parties that contains acknowledgment by the defendant of the enhanced penalties of 8 U.S.C. 1326(b)(2). Likewise, the impact to Rodriguez is identical to the jeopardy suffered by Apprendi. The different sentences specified at Level 8 and Level 24 of the Guidelines are dramatic.

The Court should also note that certain U.S. Attorney's Offices are now pleading both the complete subsections of a 8 U.S.C. 1326 case in the indictment, and listing the prior convictions in the body of the indictment. The practice of now alleging the prior conviction in the indictment should indicate that the government has now admitted that

4

this "sentencing enhancement" fact is a substantive element of the offense. See, United States v. GAF Corporation, 928 F.2d 1253, 1260 (2d Cir. 1991).

The defendant argues that for the above mentioned reasons, the Court should cure this defect by striking the 16 level adjustment set forth in the Pre-Sentence Report. The defendant argues that it is clear from the language of Booker and Apprendi, that the Supreme Curt has conceded that the Almendarez-Torrez decision was decided incorrectly. It is clear that the Court has adopted the holding and logic of the court in United States v. Campos-Martinez, 976 F.2d 589, 591-592 (9th Cir. 1992). The indictment appears defective for the purposes of imposing the higher maximum penalties, and the defendant respectfully requests that the Court treat this sentencing hearing as a prosecution under 8 U.S.C. 1326(a) or (b)(1) or Guideline Level 8.

**2. REQUEST FOR DOWNWARD DEPARTURE IN THE DEFENDANT'S BASE OFFENSE LEVEL.**

Subject to the courts ruling on the Booker argument, the defendant requests a downward departure in his base offense level for the reasons set forth below:

**Prior Proceedings**

On September 2, 2004 Mr. Rodriguez was arrested and complained of in the United States District Court charging that he illegally reentered the country after deportation in violation of the Title 8 U.S.C. section 1326(a) and (b). The defendant pleaded guilty on January 14, 2005. The Probation Department (Probation Officer Pamela J. Lombardini) conducted a pre-sentence investigation and produced a pre-sentence report for the Court. This matter is now before the Court for disposition.

5

**Summary of Departure Issues**

Mr. Rodriguez respectfully requests that the Court depart downwards in his base offense level based on a combination of circumstances that are acceptable grounds for departure under Koon v. United States, 518 U.s. 81 (1996). The defendant moves for a departure on the following grounds:

1. Unmentioned Factor. The defendant's reentry into this country was motivated by an emotional, familial and personal attachment to this country and his family. Having lived in Boston for almost 10 years and with a son living in Boston the defendant returned to this country under mitigating circumstances.

2. Discouraged Factor: Section 5H1.6, Family ties and Responsibilities, are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. In this case, the defendant's son resides here in Massachusetts. The deportation caused a separation from his son, mother and siblings.

**Legal Framework and Facts in this Case Grounds for Departure (Policy Statement)**

Under 16 U.S.C. section 2553 (b) of the Guidelines, the sentencing Court may impose a sentence outside the range established by the applicable guidelines, if the Court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different than that described. Circumstances that may warrant departure from the guidelines range pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The decision as to whether and to what extent departure is warranted rests with sentencing court on a case specific basis... Any case may involve factors in addition to those identified that have not

been given adequate consideration by the commission. Presence of any such factor may warrant departure from the guidelines, under some circumstance and in the discretion of the sentencing court.

In <u>Koon v. United States</u>, the Supreme Court changed the standard of review when a district court chooses to depart. The Court also set out the analysis that should be used by the District Court in considering a departure, and analysis that had previously been articulated in the First Circuit by the then Chief of the Court Judge Stephen G. Breyer.

> 1) What features of this case potentially take it outside the Guidelines heartland and make it a special or unusual case?
>
> 2) Has the Commission forbidden departures based on those features?
>
> 3) If not, has the Commission encouraged departures based on those features?
>
> 4) If not, has the commission discouraged departures based on those features:

United States v. Rivera 994 F.2d 942.949 (1st Cir. 1993).

The <u>Koon</u> Court agreed with the analysis "If a factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if an applicable Guideline does not already take it into account. If the factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the Court should only depart if the factor is present to an exceptional degree or in some other way that makes the case different from the ordinary case where the factor is present...If a factor is unmentioned in

the Guidelines, the Court must after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole…decide whether it is sufficient to take the case out of the Guidelines heartland…" Koon. 518 U.S. at 96-97

**Departure Factors**

The first factor, unusual in a reentry prosecution, is unmentioned but permissible if it takes the case out of the "heartland." U.S.S.G. ch. 1 part A, intro. Comment. Most reentry after deportation cases involve reentry of aliens who have little or no cultural connection to the United States. Many such aliens are often motivated by economic need. Often the alien desires to work in the United States, a country where opportunity extends to many who can easily remain anonymous within the larger community. Many wish to work in the United States, save their money and return to their native lands enriched by their labors. (I.N.S. expels more than one million illegal aliens annually. Approximately 97% of those apprehended during 1994 were Mexican nationals intercepted at the border attempting to enter without inspection. Note 2, page 3). Some are also motivated by the lucrative market in the United States for illegal drugs.

None of these typical motivations apply to the defendant. The defendant's arrival and time spent in the United States as an American impelled him to commit this crime and takes this case out of the heartland of the Guidelines. United States v. Lippman, 133 F.34d 726 (9th Cir. 1998) (downward departure permissible from section 2L1.2 range on the grounds that the defendant's reentry was motivated by cultural assimilation into the United States rather than ordinary economic incentives).

Rodriguez's family emigrated to the United States in 1988. Several siblings also arrived here and have settled in Boston.

8

Prior to his deportation, the defendant had lived in Boston for eight years. His only son has been raised here in Boston and is now 15 years old.

After he was deported, the defendant found life in Santo Domingo very difficult. Indeed the tiny village where he was from is a small agricultural village which offered no stable job opportunities for Rodriguez.

The second factor, Family Ties and Responsibilities, section 5H1.6 is mentioned and discouraged as not ordinarily relevant in determining whether a sentence should be outside the applicable Guidelines. However, where there are unusual family circumstances the Court may depart. Here, those circumstances are fully extraordinary.

Mr. Rodriguez has always lived at home with his family until he was first incarcerated in 1991. The pre-sentence report accurately describes the defendant enjoying a loving and supportive family, albeit financially strapped.

Many of the fact issues are relevant to all of the defendant's departure arguments. The basis for the 5H1.6 argument are the very same facts that support Rodriguez other claims for departure. The undersigned thus does not seek to be repetitive about certain facts.

Mr. Rodriguez wanted to return to the United States to be with his family.

CONCLUSION

The defendant respectfully requests that the Court depart downwards in his base offense level and impose a significantly reduced sentence of incarceration. The defendant will address the specific departure and sentence recommendation at the time of his sentencing hearing.

9

Respectfully submitted,
Defendant, Julio Rodriguez
By his lawyer,

_____
William Keefe
BBO: 556817
390 Centre Street
Jamaica Plain, MA 02130
Telephone: (617) 983-9200
Facsimile: (617) 983-0733

## CERTIFICATE OF SERVICE

I, William Keefe, hereby certify that a copy of the enclosed Statement of Personal History was sent to Paul Moore, Assistant United States Attorney, at the Office of the U.S. Attorney, One Courthouse Way, Ninth Floor, Boston MA, 02201, on April 21, 2005, by hand delivery.

_____
William Keefe